IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

1.     NITA BAPTISTE-SHREVE,     )
)
Plaintiff,     )
)
v.     )     CIV-20-152-SLP
)
1.     STAR LUMBER & SUPPLY     )
COMPANY, INC.,     )
)     **Jury Trial Demanded**
Defendant.     )     **Attorney Lien Claimed**

## COMPLAINT

**COMES NOW** the Plaintiff, Nita Baptiste-Shreve, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Nita Baptiste-Shreve, is an adult female, who at all times relevant hereto was a resident of Oklahoma County, Oklahoma.

2. Defendant, Star Lumber & Supply Company, is an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of: (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (b) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); and (c) violations of the Family Medical Leave Act ("FMLA").

1

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5.      All of the acts complained of herein occurred in or around Oklahoma County, Oklahoma.  Defendant is doing business in such county and may be served in such county. Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      To the extent required, Plaintiff has exhausted her administrative remedies. She filed an EEOC Charge of Discrimination on or about August 2, 2019.  The EEOC issued a Notice of Right to Sue dated January 15, 2020, which Plaintiff received by mail thereafter. And, Plaintiff has timely filed this action within ninety (90) days of her receipt of the notice of right to sue.

## STATEMENT OF FACTS

7.      Plaintiff, Nita Baptiste-Shreve, was born in August 1960 making her over the age of forty (40) at all relevant times hereto.

8.      She was employed with Defendant from in or around November 2017, until on or about March 25, 2019.  She began as a temporary employee, but was hired in a permanent position in or around November 2018.

9.      During her tenure, Plaintiff held several positions.  As a temporary employee, she reported to Vice President of Operations Stephanie Sturch and performed various clerical responsibilities.  Her duties and supervisor then changed when she was placed in a permanent

2

position in or around November 2018. She worked in Receiving for a short period of time, and then moved to Central Purchasing where she stayed for the remainder of her employment. Karli Williams (who was over Purchasing) became her direct supervisor, and Sturch her second-level supervisor.

10.     Throughout her employment, Plaintiff was a satisfactory or better employee. Not only was she offered to move from a temporary to a permanent position, but she also received compliments about her work performance.

11.     Despite her good work performance, Plaintiff was terminated on or about March 25, 2019 – the day she returned from medical leave to undergo back surgery.

12.     More particularly, in or around September 2018, Plaintiff fell while leaving Sunday Mass and injured her back.   At the time, she did not know the extent of her injuries. However, in the months that followed, she began experiencing significant medical problems.

13.     Among other medical issues, Plaintiff developed shingles and had extreme pain when breathing. As a result, she was required to take off work on occasion to seek medical treatment for her conditions, including diagnostic testing, which revealed in or around December 2018, that her back was broken.

14.     Plaintiff was also diagnosed with degenerative disc disease, spinal stenosis, and sacroiliitis.

15.     As a result of her medical conditions, Plaintiff is/was a qualified individual with a disability, in that, she suffers/suffered from physical impairments that substantially

limit/limited her ability to perform one or more major life activities, including *inter alia* her ability to lift, bend, sit and perform certain physical activities. Her internal bodily processes were also impacted, including but not limited to her nervous system, in that, she suffered from *inter alia* the shingles, as well as her musculoskeletal system. Plaintiff also has a record of such impairments and/or was regarded as having such impairments. At all relevant times, however, she was able to perform the essential functions of her job with or without reasonable accommodations.

16.    Plaintiff kept her supervisors, Williams and Sturch, apprised of her conditions. She supplied them with doctor's notes and sent them a photograph, documenting that she suffered from shingles.

17.    Sturch told Plaintiff that she shared this information with Defendant's President Cody Daniels and showed him the picture she had sent. Yet, according to Sturch, Daniels was unsympathetic. She said Daniels commented, "who's she, what does she even do here."

18.    As a result of her broken back, Plaintiff was required to undergo surgery (scheduled for mid-March 2019). She informed Williams and Sturch of her need for leave to undergo surgery.

19.    Yet, at no time was Plaintiff advised of her rights under the Family Medical Leave Act ("FMLA"). Defendant also failed to engage in an interactive process to discuss reasonable accommodations that could be provided to Plaintiff.

20.     Prior to letting Williams and Sturch know of her medical conditions and need for leave for surgery, Plaintiff had not been written up or otherwise disciplined.  However, after she told them of her medical conditions and need for leave, they began unjustly writing her up for alleged performance deficiencies.

21.     For instance, Williams claimed Plaintiff was ordering inventory that did not need to be ordered.  However, she ordered inventory based on what was shown in the computer system as being in stock.

22.     On occasion, individuals failed to properly enter inventory items into the computer system.  As a result, there may have been times when Plaintiff viewed the system and it would appear that items needed to be ordered, though the items were, in fact, in stock.

23.     If items were ordered that were already in stock, this was not due to an error by Plaintiff, but due to others incorrectly entering inventory information into the system or entering information after she checked to see whether items were in stock.

24.     Plaintiff received two write-ups, the first in or around early-February and the second in or around late-February 2019.  Both claimed that Plaintiff had purchased items that did not need to be ordered.

25.     Plaintiff went on leave to undergo back surgery in or around the week of March 18, 2019.

26.     When she returned from medical leave on or about March 25, 2019, Williams and Sturch (both in their 30s) fired Plaintiff (age 58).

27.     Williams and Sturch claimed that Plaintiff continued to purchase items that did not need to be ordered.  However, Plaintiff had been off on leave (unable to purchase any items) for approximately one week and was not told of any issues since her last write-up (in or around February 2019).

28.     This being so, Plaintiff questioned Williams and Sturch about the basis for her termination.  In response, they admitted that Plaintiff had improved, but said they had to let her go.

29.     Later that day, Sturch also said (as Plaintiff was looking for a box in which to pack her personal belongings) that Sturch did not want to terminate Plaintiff.  She also said she would be willing to provide her with a positive reference as she looked for other employment.

30.     The claimed basis for Plaintiff's termination is pretext.  She was fired the day she returned from medical leave.  And, younger, non-disabled employees actually failed to perform their job, as Plaintiff was wrongfully accused, yet they were not fired.

31.     By way of example, employee Shannon Weaver (who is in her 30s) improperly had merchandise delivered to the wrong office location, resulting in significant expense to Defendant, yet she was not terminated.

32.     Moreover, upon information and belief, after Plaintiff was terminated, her job duties were performed by a significantly younger individual, Cassidy (Last Name Unknown).

34.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered

the injuries described hereafter.

## COUNT I:  ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35.    Plaintiff is entitled to relief under the ADEA because, as stated herein, she was over age forty (40); she was qualified for her job; she was discharged and her job was not eliminated after her termination.

36.    As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

## COUNT II: ADA/ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37.    The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disability in violation of the ADA and ADAAA. The matters alleged above also constitute retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA.

38.    More specifically, Plaintiff was a qualified individual with a disability, in that, she suffers from impairments, described above, which substantially limit her ability to perform one or more major life activities, as set forth above.  Further, Plaintiff's disability

impacts one or more of her internal bodily processes, as shown herein. And, Plaintiff had a record of a disability and was regarded as disabled because she had an actual or perceived impairment; that impairment was neither transitory nor minor; and Defendant was aware of and perceived the impairment at the time Plaintiff was terminated.

39.    Despite said impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

40.    Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

41.    Moreover, Plaintiff is entitled to relief because she engaged in a protected activity (requesting reasonable accommodations in the form of *inter alia* leave time), suffered adverse actions thereafter, and a causal connection exists between her requests and the adverse actions.

42.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages as allowed by the Civil Rights Act of 1991.

43.    Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III:  FMLA Interference and Retaliation

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

8

42.     The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

43.     Plaintiff was entitled to medical leave because she worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

44.     Plaintiff was entitled to leave for her serious health conditions.

45.     Defendant interfered with Plaintiff's rights under the FMLA by *inter alia* failing to inform her of her FMLA rights.

46.     Defendant also retaliated against Plaintiff for her use of FMLA leave by firing her upon her return from FMLA leave.  That is, Plaintiff engaged in protected conduct by taking FMLA leave, she suffered an adverse employment action, and a causal connection exists between Plaintiff engaging in the protected conduct and the adverse action taken.

47.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

48.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendant's violation of the

FMLA, attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant and assess compensatory damages including but not limited to backpay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, emotional distress damages, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

RESPECTFULLY SUBMITTED THIS 21st DAY OF FEBRUARY, 2020.

s/ Jana B. Leonard
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED